### WEST SIDE IRR. CO. v. UNITED STATES.

(District Court, E. D. Washington, S. D. March 29, 1920.)

### No. 741.

1. **Equity ⬦⬦447(2)—Alleged newly discovered evidence no ground for relief on bill of review.**

    Where, at suit of United States, an irrigation company was restrained from diverting water in violation of a limiting agreement, despite its claim that the agreement was ultra vires and was the result of a mistake, alleged newly discovered evidence that one formerly an irrigation officer was informed of the mistake long before suit, that at trial had after such officer had left federal service he informed representatives of the irrigation company that he had not conveyed the information to officers of the Reclamation Service, when in fact he had, is no ground for relief on bill in nature of bill of review.

2. **Courts ⬦⬦354—State rulings as to diligence in applying for vacation of judgment for newly discovered evidence not controlling.**

    A decision of the state court, under a statute allowing vacation of a judgment within a year on account of newly discovered evidence, that the moving party must act with diligence within the year, is not absolutely controlling on the federal court, but the rule announced is a fundamental one.

3. **Equity ⬦⬦452—Relief for newly discovered evidence denied where bill of review not filed until 15 months after discovery.**

    Where bill in nature of bill of review on the ground of newly discovered evidence was not filed until 15 months after discovery of the evidence, relief will be denied for want of diligence.

4. **Equity ⬦⬦445—Decree cannot be attacked on bill of review for fraud of plaintiff in not introducing evidence beneficial to defendant.**

    A judgment in favor of the United States cannot be attacked on the ground of fraud, because the United States did not introduce evidence beneficial to the defendant.

5. **Equity ⬦⬦456—Allowing bill of review is not conclusive that newly discovered evidence warrants vacation.**

    Action of the court in allowing a bill in the nature of a bill of review to vacate a judgment on the ground of newly discovered evidence to be filed is not a determination that the evidence is sufficient to warrant vacation of the decree, and that matter may be later decided, although possibly the better practice would be to sign an order requiring the adverse party to show cause why the bill should not be filed.

In Equity. Bill in the nature of a bill of review by the West Side Irrigation Company, a corporation, against the United States. On motion to dismiss. Bill dismissed.

---

⬦⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Hartman & Hartman and Carroll B. Graves, all of Seattle, Wash., for plaintiff.

Francis A. Garrecht, U. S. Dist. Atty., of Spokane, Wash., and E. W. Burr, Dist. Counsel U. S. Reclamation Service, of Yakima, Wash., for the United States.

RUDKIN, District Judge. This is a bill in the nature of a bill of review to obtain a rehearing or reconsideration of a case finally determined by this court and affirmed by the Circuit Court of Appeals. United States v. West Side Irrigating Co. (D. C.) 230 Fed. 284; West Side Irrigation Co. v. United States, 246 Fed. 212, 158 C. C. A. 372. The parties are here reversed, but for convenience will be referred to as plaintiff and defendant, as in the original proceeding. The suit was originally brought to restrain the defendant from diverting water from the Yakima river in violation of a certain limiting agreement, a copy of which is set forth in the two opinions referred to. A final decree was entered in favor of the plaintiff in accordance with the prayer of the complaint. The opinion of the Circuit Court of Appeals affirming the decree was filed on the 15th day of October, 1917, and the mandate or remittitur from that court was filed in the District Court on the 28th day of November, 1917. On the 3d day of September, 1919, an order was entered in the appellate court granting the defendant permission to present to the District Court the present bill of complaint and to apply to that court for leave to file the same. On the same date a pro forma order was entered in this court permitting the filing of the bill and directing process to issue. Pursuant to this order the bill was filed, and the case is now before the court on motion to dismiss the bill as amended by stipulation, for want of sufficient facts, for want of equity, and upon the ground of laches.

A statement of the issues determined on the final hearing in the trial and appellate courts, together with a statement of the newly discovered evidence, will dispose of the case without further argument or comment. The issues are thus stated in the opinion of the trial court:

"It is conceded throughout the testimony that the defendant has diverted water from the river in excess of 80 cubic feet per second of time, and it asserts the right to do so upon three grounds: First, because the limiting agreement was ultra vires and void; second, because the water should be measured at the several points where it is diverted from the canal by the different stockholders or users, and not at the intake of the canal, or at least that such was the understanding of the defendant; and, third, that the defendant at all times claimed the right to divert and use 4,000 inches of water measured according to the system or module adopted by it; that it was represented to the defendant that 80 cubic feet per second was the equivalent of the 4,000 inches thus measured, while in truth and in fact the 4,000 inches, as measured by the defendant, is the equivalent of upwards of 90 cubic feet per second; and it is claimed that the difference between the 80 cubic feet per second, measured at the intake, and the 4,000 inches as measured by the defendant at the points of delivery to the different stockholders, is 24.6 cubic feet per second. In other words, the defendant claims and asserts the right to divert from the river 104.6 cubic feet per second, while the government claims that it is limited to 80 cubic feet per second."

The trial court then held that the defense of ultra vires could not prevail for two reasons: First, because no such defense was interposed by answer; and, second, because the stockholders had notice of the limiting agreement soon after its execution, and it then became their imperative duty either to abide by the agreement or promptly disavow the unauthorized acts of the corporate officers and bring notice of such disavowal home to the government, or to some authorized officer of the government. The court further found that there was no mistake of fact, either as to the place of measurement or as to quantity of water, and that the agreement was founded upon an adequate consideration.

Some new questions seem to have been raised in the Circuit Court of Appeals. That court held, first, that there was no merit in the contention that the complaint was insufficient to state a cause of action, in that it did not show that the United States or any one in privity with it had been deprived of the use of water or had sustained a present injury; second, that there was no merit in the contention that the United States had no authority to maintain the action—and disposed of the claim of mistake in the following language:

"The suggestion that the agreement was founded upon mistake cannot avail the appellant. There is no evidence whatever that there was a mutual mistake. And there is no convincing evidence of a mistake on the part of the appellant or its stockholders. And if, indeed, there was a mistake on their part, they waived the right to assert it by their subsequent silence. There is no plea of mistake in the answer to the complaint. The whole defense of the appellant as pleaded rests upon its construction and conception of the terms of the agreement itself."

The court further held that there were two answers to the claim on the part of the defendant that the limiting agreement was void:

"First, that no such defense is pleaded in the answer; and, second, that the stockholders gave no notice to any officer of the United States that they repudiated the contract, but, on the contrary, by their silence they ratified the same."

The claim of newly discovered evidence is substantially this: One T. A. Noble was an officer of the Reclamation Service of the United States on the 21st day of October, 1905, when the limiting agreement was executed; at that time the defendant believed that the 80 cubic feet of water per second was the equivalent of 4,000 inches measured at the distributing boxes of the different users, and did not discover the mistake until the summer of 1908; at the time of such discovery the defendant informed Noble thereof and entered a protest against being bound by the agreement as made, for the reason that it deprived the defendant of valuable rights and of sufficient water to supply its stockholders; at the time of the giving of such notice the defendant erroneously believed that Noble was still in the employ of the United States, and did not discover that Noble was not then in the employ of the United States until he testified on the trial of this case some seven or eight years later; when Noble left the witness stand he was asked by one of the officers of the defendant whether he had conveyed the information thus given him to the officers of the Reclamation Service, and he answered in the negative; the defendant has since discovered that this information was in fact conveyed by Noble to the officers of

the Reclamation Service, "and that if a new trial is granted it will be able to produce testimony to fully convince the court that it should prevail." It is further claimed that the plaintiff suppressed testimony at the original trial, and was therefore guilty of fraud.

[1-3] Assuming that all this testimony is newly discovered, and assuming, further, that it was all before the court on the former hearing, in what conceivable way could it change the result? There were only two issues in the case upon which the proffered testimony could have the slightest bearing. First, on the question whether the limiting agreement was obligatory upon the defendant; and, second, whether the execution of that agreement was the result of mistake, either as to the place of measurement or quantity of water to be diverted. The first issue was decided against the defendant upon two grounds: First, because no such defense was made at the trial, or, rather, presented by the answer; and, second, because "the stockholders gave no notice to any officer of the United States that they repudiated the contract, but, on the contrary, by their silence they ratified the same."

The newly discovered evidence has no bearing upon this latter issue, because it is not claimed that either Noble or the Reclamation Service was notified that the contract was executed without authority, and in that respect the record upon which the former decision was based has not been changed. Noble was simply notified that the defendant claimed that there was a mistake of fact, as a result of which it was deprived of water to which it was lawfully entitled; but, inasmuch as both courts found that there was no such mistake, how can this notice avail the defendant, or how could the new evidence change the result? On the question of mistake the Circuit Court of Appeals likewise found against the defendant on several grounds, namely:

"There is no evidence whatever that there was a mutual mistake. And there is no convincing evidence of a mistake on the part of the appellant or its stockholders. And if, indeed, there was a mistake on their part, they waived the right to assert it by their subsequent silence. There is no plea of mistake in the answer to the complaint. The whole defense of the appellant as pleaded rests upon its construction and conception of the terms of the agreement itself."

The decree was therefore affirmed on several grounds, and the silence of the defendant was only incidentally referred to. Indeed, in the view of the trial court and the appellate court the issue now sought to be raised was not presented by the pleadings in the original case, and the defendant is merely seeking a trial de novo on an entirely new theory, utterly disregarding the former trial and the finality of the former decision. For this reason alone the bill of complaint is entirely insufficient. Again, the newly discovered evidence was brought to the attention of the defendant 15 months before the present proceedings were instituted, and such delay alone is sufficient to defeat the application. Under the statutes of this state a judgment may be vacated for certain reasons within one year, but the Supreme Court has uniformly held that the moving party must act with diligence, even within the year. Nelson v. Nelson, 56 Wash. 571, 106 Pac. 138, 107 Pac. 195, and cases cited. And while the decision of the state court is not absolutely controlling here, the rule announced is a fundamental one.

[4] What has already been said fully answers the charge of fraud. Furthermore, I am not aware that any obligation rested upon the government to prove any part of the case of its adversary. As said by the Supreme Court in McDougall v. Walling, 21 Wash. 478, 58 Pac. 669, 75 Am. St. Rep. 849:

"It cannot be the rule that a judgment can be attacked for fraud because in the trial the prevailing party defendant failed to voluntarily disclose the weakness of his defense, or some evidence which would tend to overthrow his defense. Ordinarily, the pleadings must determine what issues will be tried; and it has never seemed to be the practice that a party must disclose to his adversary what his testimony will be, or that he must suggest testimony for his adversary."

[5] It is apparently insisted at this time that the court has already passed upon the sufficiency of the showing as to the newly discovered evidence in permitting the bill to be filed, and that that question is now foreclosed. If counsel is correct in this, the error of the court in permitting the bill to be filed without notice to the adverse party becomes at once apparent. But in any view of the case the position is untenable. Even had the court passed directly upon that question at an earlier stage of the trial, the court has still full jurisdiction of the case, and it is its plain duty to correct the palpable error thus committed.

I may say in conclusion that I deemed it best to dispose of the application upon its merits, rather than upon technical questions of procedure advanced at the hearing. Perhaps the better practice is to sign an order requiring the adverse party to show cause why the bill should not be filed, but whether the sufficiency of the showing made be determined before or after the filing of the bill is a matter of form rather than of substance.

The motion to dismiss is sustained.