## WEST SIDE IRRIGATING CO. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. January 3, 1921. Rehearing Denied February 14, 1921.)

No. 3518.

1. **Equity ☞447(4)—Newly discovered evidence not ground for relief on bill of review, if diligence is not shown.**

Where an irrigation company had been restrained by the United States from diverting water in violation of a limiting contract, alleged newly discovered evidence that a former irrigation officer had been informed of a mutual mistake in the contract involved before suit, and that he had conveyed such information to the Reclamation Service authorities, *held* not ground for relief on a bill of review, where diligence was not shown in discovering the evidence, and no fraud on the government's part was established.

2. **Equity ☞447(4)—Relief for newly discovered evidence denied for lack of diligence.**

Where a bill in the nature of bill of review on ground of newly discovered evidence was not filed until 15 months after discovery of the evidence, and no effort was apparently made to discover it before the original suit, relief will be denied for want of diligence.

3. **Equity ☞446—Bill of review not authorized for fraud, because plaintiff failed to introduce evidence beneficial to defendant.**

A judgment in favor of the United States cannot be attacked on the ground of fraud by a bill of review, because a witness for the United States did not volunteer evidence beneficial to the other party.

Appeal from the District Court of the United States for the Southern Division of the Eastern District of Washington; Frank H. Rudkin, Judge.

Bill in the nature of a bill of review by the West Side Irrigating Company, against the United States. Judgment dismissing the bill (264 Fed. 538), and plaintiff appeals. Affirmed.

Carroll B. Graves and Hartman & Hartman, all of Seattle, Wash., for appellant.

Francis A. Garrecht, U. S. Atty., of Spokane, Wash., and E. W. Burr, Asst. U. S. Atty., of Yakima, Wash.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

HUNT, Circuit Judge. The West Side Irrigating Company, appellant, asks review of an order of the District Court dismissing an amended complaint and entering judgment accordingly. The suit was originally brought by the United States to restrain the Irrigating Company from diverting water from the Yakima river in violation of a certain agreement dated October 21, 1905. Final decree was entered in favor of the United States and upon appeal to this court we affirmed the decree, and subsequently remittitur from this court was filed in the District Court in November, 1917. West Side Irrigating Co. v. United States, 246 Fed. 212, 158 C. C. A. 372; Id. (D. C.) 230 Fed. 284.

The original injunction ran against diversion by means of a canal of more than 80 cubic feet per second of the waters of Yakima river. The suit was brought to enforce the terms of a contract wherein it was agreed that, in order to avoid litigation and "as a compromise," to secure the indirect benefit from irrigation through federal enterprise, each subscriber would limit its respective rights of appropriation to certain specified amounts. The West Side Irrigating Company pleaded that it was not intended that the contract should be a relinquishment of any of the rights of the stockholders, or to place the amount of water claimed by the shareholders in amounts less than the shareholders required for successful irrigation, and that it was not intended that they should be deprived of that right; that the agreement was signed with the understanding that the rule which the appellant had theretofore employed in measuring and delivering water to its stockholders should apply, and that the custom was to measure one inch of water per second of time per acre measured under a five-inch pressure at the point of delivery to the land. On the appeal to this court the contentions of the parties were so fully stated that we need not repeat them herein. Our decision affirmed the decree of the District Court.

Thereafter, in September, 1919, by order of this court, the Irrigating Company was permitted to file the bill of complaint in the present suit. Appellant alleges appropriation and use since 1890 of 4,000 miner's inches of water measured at the user's distribution boxes; that on October 21, 1905, it made the agreement of limitation heretofore referred to at the solicitation of one Noble, agent and representative of the United States, by which the water should be measured in cubic feet per second of flow, instead of miner's inches, which appellant was led to believe by Noble, a hydraulic engineer, was the equivalent of the water it was appropriating (4,000 miner's inches) at the service boxes; that appellant did not discover that mistake had been made until 1908, whereupon appellant notified Noble and protested and repudiated the agreement, but that, although Noble was then employed in irrigation work by the state of Washington, appellant believed he was still employed by the United States Reclamation Service, and did not know to the contrary until the trial, had in 1914; that appellant

discovered when the protest was made that 4,000 miner's inches of water measured at the user's distribution boxes would require a much larger amount than 80 cubic feet per second; that appellant believed its rights would be protected by protest to Noble, and believed that the United States would be duly informed by Noble of its protest. It is further alleged that on the trial Noble testified that he had no recollection of any protest and rights claimed by the appellant in the summer of 1908; that afterwards, when appeal to this court was pending, its officers learned for the first time that after protest had been made Noble communicated the fact of protest to the officer of the United States in charge of irrigation affairs in Yakima valley, and had informed him of the mistake, and of the intention of the Irrigating Company and its stockholders to refuse to abide by the agreement because of the mistake and misunderstanding, discovery of which was made about June 18, 1918; that, although the agent in chief testified on the trial, nevertheless he did not disclose the fact of notice, but kept the same from the court.

Plaintiff pleads surprise at the testimony of Noble, and that it believed such testimony, and says that if a new trial is granted Noble will testify that in 1905 and 1906 he was in the Reclamation Service, and was a party to securing the agreement of limitation heretofore referred to; that he left the United States Reclamation Service in 1907, and went into the employ of the Washington state water commissioner; that in 1908 he discussed with officers of the appellant company the limiting agreement, and was told by them that the company had been misled by misunderstanding and misrepresentation as to the effect of the agreement, and that they had been given to understand that the amount placed in the agreement was equal to 4,000 miner's inches of water according to the method used by the company, and that the company would not be bound by the limiting agreement; that immediately afterwards Noble related the interview he had had with the officers of the appellant company to one Swigart, chief officer of the Reclamation Service in the Yakima projects, and told him of the protest and objection of the company, and that thereupon Swigart advised him (Noble) not to proceed to enforce the agreement; that upon the trial Noble testified, and after leaving the stand was asked by an officer of the appellant company if he (Noble) did not convey the statement and protest made, but that Noble said he did not remember; that afterwards, in 1918, long after the trial, Noble recalled the original interview with an official of appellant, and appellant now says that the reason the agreement of limitation was not enforced was because of the information conveyed to Swigart and his request not to proceed further.

Appellant pleads adverse user, and that it can prove its rights to 4,000 miner's inches if given opportunity to be heard again, and that, because of suppression of the fact by the United States of notice of the protest, a manifest fraud and injustice was visited upon the Irrigating Company; that the reason the Irrigating Company did not immediately file its bill of review was because it believed application for redress was being favorably considered, and that it would be re-

lieved without further litigation; that by reason of the discovery of the new matter the judgment ought to be reviewed and reversed, and decree awarded to the Irrigating Company for all the water originally appropriated by it and used since the time of the appropriation.

It appears that in deciding the original litigation this court considered the resolution of the board of directors of the Irrigating Company that the president and secretary be instructed to sign contracts with the government to accept 80 cubic feet of water per second from April 1st to October 1st, and 34 cubic feet from October 1st to November 1st, of each year, as the appropriation of the company of the waters of the river, provided the government should complete the irrigation project, and disposed of the suggestion made by the company that the agreement of limitation was founded upon mistake by saying:

"There is no evidence whatever that there was a mutual mistake, and there is no convincing evidence of a mistake on the part of appellant or its stockholders. And if, indeed, there was a mistake on their part, they waived the right to assert it by their subsequent silence. There is no plea of mistake in the answer to the complaint. The whole defense of the appellant as pleaded rests upon its construction and conception of the terms of the agreement itself."

We also held that the defense that the agreement of limitation was void for lack of authority on the part of the directors of the company to surrender any part of the physical property of the company was not pleaded in the answer, and that the stockholders had not been shown to have given notice to any officer of the United States that they repudiated the contract, but, on the contrary, had, by their silence, ratified the same. We regarded the case as presenting "only a written instrument and the meaning of its terms," and we held that the instrument was definite and void of ambiguity, and was made in pursuance of the express authority of a resolution of appellant's directors, and, as testified to, was made for the purpose of giving the government a definite and certain figure which it could rely upon as appellant's right to the appropriation of water.

[1, 2] Notwithstanding the decision upon these matters, the basis of the present bill is newly discovered material evidence. Such evidence is not in writing or a matter of record, but consists of the oral statement already outlined, which appellant says would be made by Noble, the engineer, if another trial is had. In Simkins, Federal Equity Cases, p. 631, it is stated that, where newly discovered evidence is relied upon, it must be shown that it was evidence not known, and which could not, with reasonable diligence, have been found, before the term at which trial was had expired. This court, in Jorgenson v. Young, 136 Fed. 378, 69 C. C. A. 222, approved of the rule that the newly discovered evidence which may form the basis of a review must be, not only evidence which was not known, but also such as could not, with reasonable diligence, have been found, before the decree was made. Rubber Co. v. Goodyear, 76 U. S. (9 Wall.) 805, 19 L. Ed. 828; Street on Federal Equity Practice, § 2119.

There is no substantial showing that the officials of the Irrigating Company were diligent in bringing to the attention of Noble the fact

alleged that he had notified some one in the Reclamation Service of his discussions with an official of the Irrigating Company. Trial of the case was had in March, 1915, and on June 18, 1918, discovery of the new evidence made. Application for review was made September 3, 1919. It does not appear that prior to the trial any one in behalf of the Irrigating Company interviewed Mr. Noble concerning the conversation alleged to have taken place between the representatives of the corporation and of the Reclamation Service; nor are there any facts averred from which fraudulent conduct on the part of any representative of the government in having induced Noble to make a false statement or to withhold the truth can be inferred. Furthermore, the conversation alleged to have been had between Noble and Swigart appears to have been quite incidental, and so vague in its character that at the time of the trial the memory of Noble could not recall it. Accepting it, however, that Noble did communicate to an officer of the Reclamation Service notice that an official of the company told him the company would repudiate the agreement, still, the notice having been given after the contract was signed and executed, the court could not safely adjudge that there had been a mutual mistake, and render decree in favor of the company. The execution of the agreement having been deliberately had, we cannot see that the statement by an officer of the company made to Noble was more than a mere claim that defendant contended a mistake had been made.

[3] There is an allegation in the bill that Swigart, agent in chief of the Reclamation Service, was a witness upon the trial, but did not disclose the fact of the notice by Noble, but kept the same from the court and from the appellant herein, and that because of the suppression of the fact of notice of protest and reservation of rights, as set forth, "a manifest fraud and injustice was and has been visited upon and against the company." It is to be noted that in the motion to dismiss the bill as filed in the lower court, and in the brief of appellee, it is positively stated that the record in the former trial conclusively shows that Swigart was not a witness at the trial. Nevertheless, upon this appeal we have assumed that Swigart was a witness and did not disclose that Noble had given him any notice, such as it is now claimed he did give to him, and still in our opinion the failure of Swigart to disclose cannot be construed as a fraud against the Irrigating Company.

Counsel for appellant say that they do not contend that there was intentional bad faith on the part of the government, but that the suppression by Swigart operated to their grave injury and was in effect fraudulent. It goes without saying that the agents of the United States should always deal in the utmost candor and truth with those persons with whom they have official relations; yet this is far from saying that upon the trial of definite issues presented by the pleadings in a litigation between the United States and a citizen, where in good faith the government is asserting a contractual obligation incurred under a writing, it is the duty of such officials to offer testimony in behalf of the one who asserts rights against the United States, and in

direct conflict with the theory that counsel for the United States has adopted in support of the public rights.

After careful examination of the case, our conclusion is that the District Court was correct in its decision, and that the judgment should be affirmed.

Affirmed.