## UNITED STATES v. UNION GAP IRR. DIST.
### No. 5938.

Circuit Court of Appeals, Ninth Circuit.
March 17, 1930.

Roy C. Fox, U. S. Atty., and E. J. Farley, Asst. U. S. Atty., both of Spokane, Wash., and B. E. Stoutemyer, Dist. Counsel, U. S. Bureau of Reclamation, of Portland, Or.

Thomas H. Wilson and H. J. Snively, both of Yakima, Wash., for appellee.

Before DIETRICH and WILBUR, Circuit Judges, and KERRIGAN, District Judge.

DIETRICH, Circuit Judge.

In 1905 the officers of the National Reclamation Service were considering the feasibility of undertaking a reclamation project on the Yakima river in the state of Wash-

ington. That they might have definite and dependable assurance of the amount of water available they adopted the plan of procuring from claimants of prior rights in the stream what are referred to as limitation agreements, that is, written declarations from such claimants that in case the project was undertaken they would never assert rights in excess of the amounts specified. The agreements were all of a uniform character, and for particulars reference is made to one of them, set out in full in West Side Irrigation Co. v. United States (C. C. A.) 246 F. 212. Such an agreement was, on November 25, 1905, executed by the Fowler Ditch Company, a corporation owning, in whole or in part, one of the ditches or canals which diverted water from the river. Having in due time thus received satisfactory assurance, the Reclamation Service at great cost constructed the project.

It seems that this ditch of the Fowler Ditch Company, originally owned by C. V. and Anamila Fowler, in its course ran through a quarter section of land belonging to C. Z. and Martha Cheney, and, for the purpose of enabling the Cheneys to irrigate their land, the Fowlers, on September 15, 1886, executed and delivered to them a deed which, after the formal parts and a recital of the consideration reads: The Fowlers do "by these presents grant, bargain, sell, convey and confirm unto the said parties of the second part (the Cheneys) and to their heirs and assigns forever, the following described property, to-wit: One hundred inches of water to be taken at any point on the N. W. ¼ of Section 35, T. 13 N., R. 19 E. W. M., where a certain ditch known as the Last Chance Ditch flows, to be designated by the parties of the second part (the Cheneys), said water to be measured as follows: (mode of measurement omitted as being immaterial). This shall be the description of one hundred inches of water as intended by the parties hereto." It was further provided that the water thus conveyed was to be chargeable with its pro rata share of the expense of maintaining and operating the ditch, but, it is to be inferred, the grantors were to continue to have the management and control of the ditch. The instrument was so executed as to entitle it to record, and it was at once recorded in the proper county.

Subsequently, in 1888, a corporation, called the Fowler Ditch Company, was formed to take over this ditch, including the water rights to which it pertained, and the owners other than the Cheneys conveyed

their interests to the corporation in consideration of receiving, corresponding amounts of its capital stock. The Cheneys declined to convey their interest, evidenced by the deed from the Fowlers, but, in addition to, and independent of, such interest, acquired fifty shares of the capital stock. Still later, and apparently after the Fowler Ditch Company had executed the limitation agreement above referred to, that company conveyed the ditch, subject to or exclusive of the Cheney deeded interest, to the Lombard Company, which in turn thereafter made conveyance to the appellee, Union Gap Irrigation District. For what reason does not appear, but the Reclamation Service never procured a limitation agreement from the Cheneys, and the latter have at all times declined to alienate, and have consistently claimed such rights as were conveyed to them by the Fowler deed.

In 1928 the appellee insisted upon diverting into and conveying through the ditch, not only the amount of water specified in the Fowler Company's limitation agreement, but, in addition thereto, enough to supply the Cheneys with 100 inches. The government contends that it actually diverted in excess of these two amounts, but, inasmuch as it claims no such right, the fact in that regard, whatever it may be, is immaterial to the real issue, which involves only the question whether the water that may rightfully be diverted into the ditch is that specified in the limitation agreement or that amount plus the Cheneys deeded right. That the limitation agreement was valid and that it is binding upon the appellee as a successor in interest of the Fowler Ditch Company are conceded.

In instituting this suit, the government sought an injunction restraining appellee from diverting water in excess of the amount specified in the limitation agreement. In its answer the appellee Irrigation District pleaded the Cheney right and its source, together with facts bearing upon its legal status, which, to some extent, are also exhibited in plaintiff's complaint. And at the opening of the trial counsel for appellee, calling the court's attention to the nature of the controversy and the Cheneys relation thereto, suggested that it would be necessary to have them brought in as parties; otherwise the principal issue could not be effectually adjudicated. Being at that time of the view that appropriate decree could be entered disposing of the issue between plaintiff and the defendant without prejudice to the rights of the Cheneys, the court, ignoring the sug-

gestion, directed the trial to proceed. But finding upon all the evidence that some ground existed for contending that the Cheney's right is of such character that the water to which it pertains is to be deemed not within the operation of the Fowler Ditch Company's limitation agreement, the court concluded that the presence of the Cheneys was indispensable to a complete adjudication, and therefore entered a decree enjoining the appellee and its representatives from diverting from the river water in excess of the amount specified in the original Fowler Ditch Company limitation agreement (and amendments thereto about which there is no controversy), with the proviso or exception, however, that, until such time as the question shall be adjudicated between the United States and the Cheneys or their successors, the defendant may divert an additional amount sufficient to satisfy the Cheneys' deeded right. Complaining of this proviso, the government prosecutes this appeal.

We are of the opinion that this mode of disposing of the case was erroneous, and that the court should have either ordered the claimants of the Cheney right brought in —a preferable course—or should have unconditionally adjudicated the whole issue as between the parties present, without prejudice, of course, to the Cheneys or their successors in interest. We say preferably the holders of the Cheney right should have been brought in, for obviously this right is so interwoven with the issue in suit that by pursuing that course a complete adjudication could be had by a single decree of the controversy in all of its aspects. But we do not think the Cheneys are indispensable parties. In a measure, it is true, the underlying issue here turns upon the legal effect of the Fowler-Cheney deed. The appellee's position is that this deed operated to transfer to the Cheneys the legal title to the water therein described and a corresponding interest in the ditch; in short, that upon the execution of the deed the grantors and grantees named therein became tenants in common. The government's contention apparently is that the instrument is more in the nature of a contract imposing upon the Fowlers and their successors in interest the personal obligation to deliver for the Cheneys' use water to which the Fowlers continued to hold title, and that therefore the limitation agreement later executed by the Fowler Company affected this 100 inches as well as the residue of the Fowler right; and that, while the limitation agreement cannot operate to the prejudice of the Cheneys,

their right is to demand delivery of 100 inches out of the amount specified in the limitation agreement. Just how the Cheneys construe their deed or characterize the right defined thereby is not entirely clear; the parties hereto are not in accord upon the subject. But, however that may be, the Cheneys are not legally bound by any representations or averments appellant or appellee may make in regard thereto.

While the legal effect of the Fowler-Cheney deed is material to the construction of the Fowler limitation agreement, which is the basis of the controversy in suit, it is not necessarily conclusive, for, assuming the correctness of appellee's view, it was competent for the Fowler Ditch Company, if it saw fit so to do, to restrict its right of diversion for the use of its stockholders to the amount specified in the limitation agreement less the Cheney 100 inches. And one of the contentions of the government is that not only is the limitation agreement susceptible to such a construction but in practice it was so construed by all parties in interest continuously from the time of its execution up to the year 1928.

Until the necessity arises, we are not disposed, in the absence of the Cheneys, to put a construction upon their deed. We are considering here only the question whether the court below should have brought them in or, in their absence, should have adjudicated the issue between the appellant and appellee. The appellee cannot contend that they were indispensable parties to this issue, for the reason that it would not have been prejudiced by an unconditional adjudication. The only interest the Cheneys would have in the controversy would be in the construction which must incidentally be placed upon their deed. In maintaining its position in that respect or resisting appellant's contention, the appellee is under no disability or handicap by reason of the absence of the Cheneys. If it succeeds, it will have every advantage that like success would afford were the Cheneys present, and, if it be unsuccessful and the view contended for by the Government prevails, it would have no ground for complaint because of the absence of the Cheneys. True, if it succeeds, it would still be possible that in an action between it and the Cheneys, either in a state court or the federal court, the opposite view, that is, the one here contended for by the appellant, might prevail; but, even so, as between it and the government, the judgment here would be conclusive, and would afford it full pro-

tection. In that contingency the appellant would be in a position of having had a construction of the Cheney deed less favorable to it respecting its controversy with appellee than the subsequent construction of the same instrument in litigation between appellee and the Cheneys. But it is resisting the bringing in of the Cheneys, and hence cannot complain.

Reversed, with directions to set aside the decree, to take appropriate proceedings to bring in the Cheneys or their successors in interest if that course is now feasible and may be followed without unreasonable delay and expense, and ultimately either with or without the Cheneys unconditionally to determine the issues; without costs to either party.