**BRANDING IRON CLUB v. RIGGS.**

**No. 4686.**

United States Court of Appeals,
Tenth Circuit.

Oct. 29, 1953.

Phil E. Daugherty, Oklahoma City, Okl. (Ames, Daugherty, Bynum & Black, Oklahoma City, Okl., of counsel), for appellant.

Max H. Lawrence, Oklahoma City, Okl., for appellee.

Before PHILLIPS, Chief Judge, and MURRAH and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

This is an action by William C. Riggs against The Branding Iron Club, a Delaware corporation, to recover additional compensation allegedly due him under an employment contract with the defendant. The case was tried to a jury which found for the plaintiff in the amount of $2,870.09, and the defendant appeals.

The complaint alleged that an oral contract of employment was entered into between the plaintiff and the defendant, acting through its president, under which the plaintiff was to be employed by the defendant as the manager of its club near Oklahoma City, Oklahoma. It was alleged that the plaintiff was to receive as compensation $100 per week plus 1½% of the total gross intake or revenue of the Club, including membership dues, receipts from services and sales, and all other revenue, receipts and income of any kind or character connected with the operation of the Club. It was further alleged that from October 1, 1950 to April 12, 1952 he performed all duties required of him, and that during that period he received from the defendant his weekly salary of $100, but that he did not receive any of the additional compensation of one and one-half percent of the total gross intake to which he was entitled. The complaint alleged that the plaintiff believed the gross intake of the defendant from the "1st day of October, 1950 to the 12th day of April, 1952," exceeded $215,000, and that the defendant refused upon demand to pay the plaintiff his share of the gross proceeds.

The defendant's answer admitted that the defendant employed the plaintiff under an oral contract and that it had paid

him $100 a week compensation from October 1, 1950 to April 12, 1952, but denied that it was indebted to the plaintiff in any sum. It alleged that the sum in controversy, according to the plaintiff's own figure, was less than the jurisdictional amount of $3000.

Prior to the trial of the issues, the parties entered into a written stipulation wherein it was agreed that the plaintiff was an Oklahoma resident and that the defendant was a Delaware corporation which operated a private country club in Oklahoma County, Oklahoma; that the plaintiff was employed by the defendant's president under an oral contract of employment to act as manager of the Club; that such employment existed continuously from October 1, 1950 through April 12, 1952; that the plaintiff performed his duties to the satisfaction of defendant's officers and directors; and that the defendant paid the plaintiff $100 per week during the above stated employment period.

When the case was called for trial, plaintiff's attorney informed the court that he had recently learned from defendant's counsel that a portion of the gross receipts upon which the plaintiff had a claim might have been collected prior to October 1, 1950. The court was advised that the plaintiff claimed the right to receive one and one-half percent of the gross receipts from the date of the inception of the Club as a private country club, rather than from the date of October 1, 1950. Plaintiff then requested leave to amend his complaint to reflect this claim. The court was of the opinion that such amendment was proper and could be made later, if necessary, to conform to the proof. Counsel for the defendant then stated:

"The defendant is in this position: We are ready for trial and the amendment wouldn't affect us any * * * ."

Plaintiff's counsel, in his opening statement to the jury, stated that the action was one to recover one and one-half percent of the gross intake of the Club from the time of its inception up to and including April 12, 1952. Counsel particularly stressed the fact that the contract permitted recovery of 1½% of the Club's total income from the date of its inception as a private country club, and the defendant made no objection. The issue was clearly raised and understood by the parties throughout the trial.

Judgment was entered on March 10, 1953. On that date, the plaintiff's complaint was amended by adding the sentence, "Said gross receipts to be computed from the first receipt of said Club after its inception as a private country club," and also by interlineation, where appropriate, by striking the date October 1, 1950 and inserting the phrase, "from the date of inception as a private country club."

The defendant raises three major questions on appeal. It contends that the trial court erroneously permitted the plaintiff to introduce evidence contrary to and in conflict with the stipulation of the parties; that it erroneously permitted the plaintiff to amend his complaint after judgment; and that it erroneously refused to dismiss the action for lack of jurisdiction.

The jurisdictional question will be considered first. The defendant urges that the plaintiff's cause of action did not at any time involve more than $2870.09. The basis of this contention is that although the complaint alleged that the gross intake of the defendant from October 1, 1950 to April 12, 1952 exceeded $215,000, the defendant's bookkeeper, who was called as one of plaintiff's witnesses, testified that the gross receipts for that period were only $191,338.41. She testified that the total cash receipts from the time the defendant started soliciting memberships was $210,890.19, but that $19,551.78 of that sum was collected for memberships in the period from July to October, 1950, when a membership drive took place. The substance of plaintiff's testimony was that by the terms of the employment contract he was entitled to 1½% of the Club's gross receipts from the date of its inception as a private country club, although he was entitled to the $100 per week salary only

from October 1, 1950 when he assumed his duties as manager.

▰ The test to determine the amount in controversy for the purpose of jurisdiction is the sum demanded in good faith, not the sum found to be due. To justify a dismissal of an action upon this ground it must appear to a legal certainty that the claim is really for less than the jurisdictional amount. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845. The rule was fully discussed by this court in Wyoming Railway Company v. Herrington, 10 Cir., 163 F.2d 1004 and need not be repeated here. The record in this case clearly discloses that the claim for which plaintiff offered proof was for a percentage of the defendant's total gross income prior to April 12, 1952, which was alleged to be in excess of $215,000. The proof showed it to be in excess of $210,-000. The fact that the complaint alleged that the entire sum was received after October 1, 1950 would not of itself prove bad faith by the plaintiff even though a portion of it was received before October 1, 1950.

The defendant admits that if the plaintiff is permitted to prove the entire sums received by it from the date of its inception to April 12, 1952, the amount in controversy will be greater than the jurisdictional amount, but it contends that the stipulation entered into between the parties prevents the plaintiff from introducing any evidence in conflict therewith, and that by permitting the plaintiff to amend his complaint, the court created a new issue contrary to and in direct conflict with the stipulation.

▰ The defendant overlooks the fact that the stipulation was not intended to establish all the facts in the case but that it related primarily to the plaintiff's duties as manager of the Club and the salary which was paid to him as such

manager. The plaintiff did not testify that he assumed his duties as manager prior to October 1st, but stated that on September 1st he started to work doing the things considered necessary to open the Club. This was in accord with the explanation of plaintiff's counsel when the case was called for trial and the opening statement to the jury. The plaintiff further testified that under the terms of the employment contract he was to receive a percentage of the gross income prior to the time he assumed his duties as manager. In other words, plaintiff says that under the terms of the contract he was to be paid $100 per week from October 1, 1950 and in addition $1\frac{1}{2}\%$ of the gross income of the defendant from its inception as a private country club. This was not in conflict with the stipulation and became one of the issues in the case which was submitted to the jury.

▰ The obvious purpose of the stipulation was to use it in place of evidence to establish only the facts to which it referred. It was not intended as a stipulation of all the facts in the case and it bound the parties only as to the facts agreed upon. Clason v. Matko, 223 U.S. 646, 32 S.Ct. 392, 56 L.Ed. 588; Annotation 8 A.L.R. 1172; 2 Am.Jur., Agreed Case, § 4.

▰ The contention that the court erroneously permitted plaintiff to amend his complaint after the entry of judgment is without merit. The verdict was returned January 29, 1953. The defendant's motion for entry of judgment or in the alternative for a new trial was denied March 9, 1953. The journal entry of the judgment was filed on March 10, 1953, the same date which the court permitted the plaintiff to amend his complaint.

▰ Under 15(b) F.R.C.P.[1] if issues, not raised by pleadings, are tried by the express or implied consent of the par-

---

1. Rule 15(b) reads:
 "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the

ties they shall be treated as though raised by the pleadings. If objections are made to the introduction of evidence upon the ground that it is not within the issues made by the pleadings the court shall freely permit amendments. If the amendment causes surprise to the other party, a continuance may be granted. But failure to amend does not deprive the party of its right to submit such evidence since under Rule 15(b) pleadings may be amended even after judgment to conform to the evidence. Federal Deposit Ins. Corp. v. Siraco, 2 Cir., 174 F.2d 360, 363; Scott v. Baltimore & Ohio Railroad Co., 3 Cir., 151 F.2d 61; Swift & Co. v. Young, 4 Cir., 107 F.2d 170; Cameron, Joyce & Co. v. McLouth, 7 Cir., 70 F.2d 6. Furthermore, in the instant case, the plaintiff advised the court and the defendant that he desired to make an amendment to his complaint, and the defendant's attorney stated in open court that the amendment would not affect its defense. The case proceeded to a trial of the issue without objection from the defendant. The general rule is that a party cannot subsequently challenge an issue which is actually litigated if he has had actual notice and adequate opportunity to defend. Consolidated Edison Co. v. N. L. R. B., 305 U.S. 197, 228, 59 S.Ct. 206, 83 L.Ed. 126; N. L. R. B. v. Mackay Radio & Telegraph Co., 304 U.S. 333, 350, 58 S.Ct. 904, 82 L.Ed. 1381; Kuhn v. Civil Aeronautics Board, 87 U.S.App. D.C. 130, 183 F.2d 389; Pasquel v. Owen, 8 Cir., 186 F.2d 263; Pate v. Specht, 175 Okl. 318, 53 P.2d 239.

The defendant complains of the trial court's refusal to admit in evidence an unsigned employment contract prepared by plaintiff and submitted to the defendant; and to permit the introduction of the minutes of the first meeting of the directors of the defendant relating to the plaintiff's employment.

The defendant admitted that plaintiff was employed under an oral contract. The proposed unsigned and undated contract named the defendant's president personally as one of the contracting parties and contained terms providing that the plaintiff should be paid $100 per week and 1½% of the gross revenue of the Club, including membership dues and all other receipts. It was one of several such contracts which were prepared prior to the oral agreement. Apparently the defendant is of the view that this particular contract was admissible to show that its president had refused to sign a written contract containing the terms which the plaintiff alleges were agreed to orally and, therefore, it was evidence that he would not enter into an oral contract for the defendant containing the same terms.

Where an oral contract is disputed, all relevant circumstances surrounding the agreement, including statements of the parties and written documents, may be shown to establish its terms. University City, Mo. v. Home Fire & Marine Ins. Co., 8 Cir., 114 F.2d 288, 297; Pacey v. McKinney, 9 Cir., 125 F. 675, 680; Boone v. Maloney, 171 Okl. 454, 43 P.2d 749; 17 C.J.S., Contracts, § 593. The record here does not disclose why this particular proposed contract or any of the similar ones were not executed by the parties. They may have been discarded for a number of reasons other than the one advanced by the defendant. In addition, defendant's president testified that he did not agree to the percentage payments claimed by the plaintiff and referred to in the exhibit. The proposed contract would have been merely cumulative of the evidence. We,

---

trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence." Fed.Rules Civ.Proc., Rule 15(b), 28 U.S.C.A.

therefore, believe that the refusal to admit it in evidence was not inconsistent with substantial justice and its exclusion, if erroneous, would not warrant a reversal. Fed.Rules Civ.Proc. rule 61, 28 U.S.C.A.

 The refusal of the court to admit the minutes of the defendant to show that the president lacked authority to enter into a contract with the plaintiff was proper. The defense of want of authority is an affirmative defense and must be specifically pleaded. United States v. West Side Irrigating Co., D.C.E.D.Wash., 230 F. 284, affirmed, 9 Cir., 246 F. 212; Leonard & Montgomery Real-Estate & Investment Co. v. Bank of America, 8 Cir., 86 F. 502; Fed. Rules Civ.Proc. rule 8(c), 28 U.S.C.A. Furthermore, these minutes were of a meeting of defendant's directors held June 16, 1951 or eight and one-half months after the plaintiff became manager of its Club. There is no evidence that the plaintiff was present at the meeting or knew of its action. It is a general rule that in the absence of knowledge and assent, the books and records of a corporation are not competent evidence against third persons and strangers to prove contracts between them. Fletcher, Cyclopedia of the Law of Private Corporations, Vol. 9, Sec. 4619; Oregon & C. R. Co. v. Grubissich, 9 Cir., 206 F. 577; Harrison v. Remington Paper Co., 8 Cir., 140 F. 385, 402, 3 L.R.A.,N.S., 954, certiorari denied 199 U.S. 607, 26 S.Ct. 747, 50 L.Ed. 331.

 The evidence submitted by the plaintiff, together with the facts admitted in the stipulation, was sufficient to create a question of fact for the jury as to whether under the terms of the oral contract the plaintiff was entitled to recover one and one-half percent of the gross receipts of the Club from the date of its inception to the date he resigned. The trial court properly submitted this question to the jury.

Judgment affirmed.